**Charles Edmond BATTS, Plaintiff,**

v.

**Pamela RICHARDS and John Armstrong, Defendants.**

**No. 3:95CV2024 (RNC).**

United States District Court, D. Connecticut.

March 31, 1998.

Charles Edmond Batts, Northern Correctional Institution, Somers, pro se.

Antoria D. Howard, Attorney General's Office, Public Safety & Special Revenue, Sharon M. Hartley, Attorney General's Office, Hartford, for Pam Richards, John Armstrong.

Dave Mirault, Somers, CT, pro se.

Thomas Graham, Somers, CT, pro se.

Luis Millet, Somers, CT, pro se.

Fernando Soto, Newtown, CT, pro se.

## RULING AND ORDER

CHATIGNY, District Judge.

Plaintiff brings this action *pro se* under 42 U.S.C. § 1983 alleging that defendants placed him in administrative segregation and transferred him to the Northern Correctional Institution in Somers, Connecticut ("Northern") in violation of his rights under the fourteenth amendment. Defendants have moved for summary judgment [Docs. 93, 118]. For the reasons that follow, the motion is granted.[1]

---

1. Since the complaint was filed, plaintiff has commenced five other actions in this court. In one of those actions, Judge Goettel has entered an order directing plaintiff not to file any further motions or applications of any sort without leave of court. *Batts v. Armstrong*, Civil No. 3:95CV2680 [doc. # 21]. In addition, plaintiff has filed numerous motions and other documents in this action asserting a variety of grievances arising out of events occurring after his

The essential facts are undisputed. On January 27, 1995, plaintiff, then an inmate at Garner Correctional Institution, assaulted two correctional treatment officers (CTO's), and was placed in administrative detention. The assaults led to a disciplinary hearing, at which plaintiff pled guilty to the assaults, and a state criminal prosecution for assault, which resulted in a jury verdict of guilty. Plaintiff's assaults on the CTO's also led to a review of his security classification and a classification hearing. The hearing officer who presided at the hearing recommended that plaintiff be placed in administrative segregation. Her recommendation was approved by the Director of Classification and Population Management, who authorized that plaintiff be placed in administrative segregation. See Richards Aff. of March 26, 1998, [Doc. 172] ¶¶ 6–8 and Ex. D. Thereafter, plaintiff was transferred to Northern. See Richards Aff. of June 19, 1997 [Doc. 94] ¶ 9.

Plaintiff complains that by placing him in administrative segregation at Northern, defendants have punished him in violation of the Due Process Clause. To establish such a violation, plaintiff must demonstrate that he has been deprived of a protected liberty interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). Placing an inmate in administrative segregation does not implicate a protected liberty interest unless it entails "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Ct. *Olim v. Wakinekona*, 461 U.S. 238, 245–46, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (interstate prison transfer does not deprive inmate of liberty interest protected by Due Process Clause).

Assuming plaintiff had a protected liberty interest in remaining in the general prison population at Garner, there can be no doubt that he received due process: he was given written notice of the classification hearing 48 hours in advance [Doc. 120, Ex. F]; he was given an opportunity to call witnesses [Doc. 120, Ex. F]; he was given a hearing before a hearing officer with a staff advocate acting on his behalf [Doc. 120, Ex. G]; and the hearing officer issued a written report [Doc. 120, Ex. G]. See *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir.1995).

Plaintiff claims that his placement in administration segregation was based on improper enhancement of the level of his assaults against the CTO's to Level 1.[2] The Department enhances the level of an assault if the assault is committed by an inmate using an "actual or homemade weapon against staff (e.g., knife, club)." In plaintiff's case, the Department enhanced the level of plaintiff's assaults because of his large size, stating that plaintiff "Hit CTO Caruso with closed fist in the head—Batts is 6 feet tall weighs 375 lbs." [Doc. 120, Ex. G]. With that enhancement, the assault fell into the Level 1 range. *Id.*

Enhancing the level of plaintiff's assaults based on the increased risk to staff and inmates posed by his large size appears to have been within the discretion of the Department of Correction.[3] Moreover, the

---

transfer to Northern. In those papers, plaintiff has alleged, among other things, that various persons have conspired to cause him pain and emotional distress, kept him in restraints, retaliated against him and taken his property. This ruling does not attempt to address any of those matters on the merits, nor any other matters alleged in plaintiff's numerous filings, because they are beyond the scope of the complaint in this action. Accordingly, this ruling is without prejudice to any other claims plaintiff has presented or might yet present in a properly filed complaint.

**2.** Under the version of the Administrative Directives submitted by plaintiff, an inmate who commits a Level 1 assault on a DOC employee is automatically reviewed for placement in administrative segregation. See DOC Admin. Dir. 9.2(12)(F) (1995), [Doc. 158, Ex. C–5].

**3.** At plaintiff's criminal trial, defendant Richards testified that enhancing the level of plaintiff's assault to Level 1 was "a discretionary decision that I have that I can make." [Doc. 150, attach. at 35]. When asked if she could enhance the level of an assault based on an inmate's size, Ms. Richards responded "I can do that. There's a number of ways that you can aggravate a level. That certainly is one of them." *Id* at 36.

decision to place plaintiff in administrative segregation did not violate the Due Process Clause in any event. Regulations in effect at the pertinent time provided for assignment to administrative segregation whenever "the security of the institution, [or] the safety of inmates or staff" [was] jeopardized and "for inmates who, after punitive measures ha[d] been taken, [could] not reasonably be returned to general population because of safety and/or security concerns." *See* DOC Admin. Dir. 2.11(II)(1) (1981).[4] The hearing officer found that plaintiff "pose[d] a risk to the safety of staff and other inmates if he remain[ed] in general population." [Doc. 120, Ex. G]. That finding is adequately supported by plaintiff's assaults on the CTO's and was made pursuant to procedures that amply satisfy due process requirements.[5]

Accordingly, defendants' motion for summary judgment is hereby granted and the action is dismissed. The Clerk may close the file.

So ordered.

---

4. For later versions of DOC Administrative Directives, see Doc. 120, Ex. I (Admin.Dir.9.2(12)(C)), and Doc. 158, Exs. C–3 and C–4 (Admin.Dirs.9.4(3)(B), 9.2(12)(F)).

5. Plaintiff's complaint alleges that the process by which he was placed in administrative segregation violated the fourth and eighth amendments. However, plaintiff's challenge to the decisions that led to his confinement in administrative segregation is properly analyzed under the Due Process Clause. Plaintiff also asserts that enhancing the level of his assaults on the CTO's based on his weight constitutes obesity discrimination prohibited by federal law. However, defendants were clearly entitled to take his weight into account in assessing the seriousness of the assaults and the risk he would pose to staff and others if permitted to remain in general population. Finally, plaintiff's complaint also asserts that he has been denied access to the courts in violation of his rights under the first amendment, but that claim is belied by the record of his frequent filings.